IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 2, 2010

## STATE OF TENNESSEE v. SEQUNA COPELAND

## Direct Appeal from the Circuit Court for Lauderdale County
No. 8449     Joseph H. Walker, III, Judge

## No. W2009-02029-CCA-R3-CD  - Filed October 20, 2010

The defendant, Sequna Copeland, pled guilty in the Lauderdale County Circuit Court to one count of facilitation of second degree murder, a Class B felony.  The agreement provided for an eight-year sentence, with the manner of service to be determined by the trial court. The trial court denied the defendant's request for an alternative sentence and ordered confinement in the Department of Correction.  On appeal, the defendant contends that the court erred in denying alternative sentencing.  Following review of the record, we find no error and affirm the sentence as imposed.

## Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID H. WELLES and CAMILLE R. MCMULLEN, JJ., joined.

Gary F. Antrican, District Public Defender, and David S. Stockton, Assistant Public Defender (on appeal), and C. Michael Robbins, Oklahoma City, Oklahoma (at trial), for the appellant, Sequna Copeland.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; D. Michael Dunavant, District Attorney General; and Julie K. Pillow, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## Factual Background

The underlying facts supporting this conviction, as recited by the State at the plea hearing, are as follows:

Had this matter gone to trial the State would have shown on August 9, 2008, in Lauderdale County, that [the defendant] was driving the vehicle of Renard Webster - - it actually was his father's vehicle, but he was driving that particular vehicle, which was a maroon truck; that Renard Webster was the middle passenger in this truck, and Terry Copeland was on the passenger's side of this particular vehicle.

That this vehicle had earlier in the evening been involved with these three individuals in this particular vehicle in an altercation at a liquor store up on Washington [S]treet. This continued to escalate through the night.

That [Terry Copeland, the defendant,] and Mr. Webster observed the blue Neon that at the time was occupied by Brian Bonds being the driver of that particular vehicle, Steve Hammond being the front passenger, Markee Deberry being one of the rear passengers, and Brandon Humphreys being the other rear passenger.

That they followed this particular Dodge Neon down Highway 51 South; that they continued to follow the vehicle onto Highway 19 East, and that shortly after turning onto Highway 19 East they opened fire on this particular vehicle.

The proof would have shown that there were two bullet holes in the bumper of the Neon on the left corner, that there was an additional bullet hole in the rear driver's side passenger door, and there was a hole in the glass of the rear passenger driver's side window.

The proof would have further shown that Mr. Bonds was able to pull the vehicle to the side of the roadway but died shortly thereafter, prior to emergency personnel arriving on the scene, which was within minutes.

That the individuals that were the occupants of the vehicle saw this red truck or maroon truck slow down. They had some concerns with the truck coming back around to further shoot at them or the vehicle, and they fled the area.

Proof would have further shown that the TBI did a further thorough inventory of this particular Dodge Neon; that they sent additional evidence to the TBI crime lab for analysis and found no gunshot residue at any point in the Dodge Neon, as well as no bullet holes on examination of the truck.

That the three witnesses, being Markevious Deberry, Brandon Humphrey, and Steve Hammond would have all testified that there were no shots fired from that particular blue Neon prior to or subsequent to being fired on by Mr. Terry Copeland; that their testimony would have been that Terry Copeland, being assisted by [the defendant] as far as maneuvering the vehicle into position, opened fired on the Dodge Neon resulting in the death of Brian Bonds.

The State continued and noted that the defendant and Terry Copeland were arrested soon thereafter and that each gave a statement to police. The substance of both statements was that the group had been at a liquor store earlier in the evening and that words were exchanged between Steve Hammond and Terry Copeland. According to the statements given, they, along with Renard, were later traveling down the road when the blue Neon approached them. The two further stated that the passengers in the Neon fired first and that Terry Copeland only returned fire in defense. However, the State again reiterated that the physical evidence was contrary to this version of facts.

Based upon these actions, the defendant, along with his two co-defendants, was indicted by a Lauderdale County grand jury for premeditated first degree murder, felony murder, attempted first degree murder, two counts of attempted second degree murder, and employment of a firearm during the commission of a felony. The defendant later entered a *nolo contendere* plea to the lesser offense of facilitation of second degree murder, with the remaining counts of the indictment being dismissed. Pursuant to the agreement, the defendant was to receive a sentence of eight years as a Range I offender; however, the manner of service was left to the trial court's determination. The defendant filed a request for alternative sentencing, and a hearing was held on the matter.

The defendant called both of his parents to testify at the hearing. The defendant's father testified that he had a handyman-type job for the defendant should he be placed on probation and, further, that he would help monitor the defendant's conduct and would report any violations. The defendant's mother testified that the defendant would live with her if he was granted probation and that she too would report any violations of probation. Next, the twenty-year-old defendant took the stand and first acknowledged that the portion of his statement to police indicating that the victims had fired a weapon first was incorrect. However, he stated that he did not lie when giving the statement to police but, rather, was merely relying upon information his brother had given him. The defendant went on to testify that he was pursuing a GED and that he intended to complete the program regardless of whether he was granted probation.

The defendant also acknowledged that he had been a member of the Gangster

Disciples but contended that he had renounced his membership at the age of seventeen. He further stated that his two crown tattoos, known symbols of the Gangsters Disciples, were not gang related, and he denied that his prior conviction for simple assault was related to gang activity. On cross-examination, the State questioned the defendant about the facts surrounding the simple assault conviction, establishing that the crime was gang-related. The defendant acknowledged that the simple assault conviction occurred when he was nineteen years old, two years after his alleged renouncement of membership in the gang; however, he maintained that he was simply visiting a friend during the event, basically asserting that being in the wrong place at the wrong time led to his conviction. He further acknowledged that prison authorities had classified him as a gang member upon his entrance to the prison, but he maintained that it was an error he was trying to correct.

After hearing the evidence presented, the trial court denied the defendant's request and ordered that the sentence be served in the Department of Correction. The defendant has timely appealed.

## Analysis

On appeal, the defendant asserts that "the trial court erred in denying alternative sentencing." Initially, the State has submitted that the defendant has waived review of this issue based upon his failure to "support his claim with actual argument or relevant case law." Pursuant to Tennessee Rule of Appellate Procedure 27(a)(7) and Tennessee Court of Criminal Appeals Rule 10(b), an issue presented for appeal to this court is required to be supported by argument and citations to authority. We agree with the State that the defendant's argument section in his brief is nothing more than a restatement of portions of his testimony during the sentencing hearing, namely that: (1) he admitted he lied during his initial statement to police; (2) he admitted he was affiliated with the Gangster Disciples at some point, although asserting that he renounced his membership; (3) he would have employment through his father if granted probation; and (4) he did not yet have his GED. We agree with the State that this alone is insufficient to meet the requirements of the rules, as at no point does the defendant explain how, pursuant to relevant authority, the record preponderates against the findings of the trial court. However, in the conclusion section of the brief, the defendant, relying upon Tennessee Code Annotated section 40-36-106, asserts that the trial court erred in finding that a community corrections alternative sentence was not appropriate in this case, despite the fact that: (1) the defendant has a prior history of convictions for assault, drug possession, and possession of a firearm; (2) he was on probation at the time of the instant homicide; (3) he was affiliated with a gang as a juvenile; and (4) he has previously received both anger management and mental health counseling. As such, in the interest of justice and finality, we elect to review the defendant's issue.

-4-

When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the court from which the appeal is taken are correct. T.C.A. § 40-35-401(d) (2006). The burden is on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported by the record, and gave due consideration to the factors and principles that are relevant to sentencing, we may not disturb the sentence even if a different result was preferred. *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court that are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994). In conducting a *de novo* review of a sentence, we must consider: (1) any evidence received at the trial and/or the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancement factors; (6) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses; (7) any statements made by the defendant on his or her own behalf; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210, -103 (2006); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The 2005 sentencing amendments deleted the sentencing provision granting a defendant a presumptive favorability for an alternative sentence. Under the 2005 amendments, a defendant convicted of a Class C, D, or E felony and sentenced as a standard or mitigated offender "should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6). Evidence to the contrary may be established by showing that: (1) confinement is needed to protect society by restraining a defendant who has a long history of criminal conduct; (2) confinement is needed to avoid depreciating the seriousness of the offense, confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses; or (3) less restrictive measures than confinement have frequently or recently been applied unsuccessfully to the defendant. *Ashby*, 823 S.W.2d at 169 (citing T.C.A. § 40-35-103(1)(A)-(C)). However, the statute specifically states that "[a] court shall consider, but is not bound by, this advisory sentencing guideline." T.C.A. § 40-35-102(6).

In making its determination, the trial court shall also consider the mitigating and enhancing factors set forth in Tennessee Code Annotated sections 40-35-113 and -114. T.C.A. § 40-35-210(b)(5) (2006); *State v. Boston*, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). In addition, a trial court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. T.C.A.

§ 40-35-103(5); *Boston*, 938 S.W.2d at 438.

We note that the defendant was convicted of a Class B felony, which precludes his entitlement to be considered as a favorable candidate for an alternative sentence with regard to the conviction. Nonetheless, he remains eligible for an alternative sentence because his sentence was ten years or less and the offense for which he was convicted is not specifically excluded by statute. *See* T.C.A. §§ 40-35-102(6), -303(a) (2006).

Although probation must be considered, "the defendant is not automatically entitled to probation as a matter of law." T.C.A. § 40-35-303(b), Sentencing Comm'n Cmts; *State v. Hartley*, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991). Rather, a defendant is required to establish his "suitability for full probation." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); *see also* T.C.A. § 40-35-303(b). A defendant seeking full probation bears the burden of showing that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (quoting *Hooper v. State*, 29 S.W.3d 1, 9-10 (Tenn. 2000)). Among the factors applicable to probation consideration are the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978).

In imposing a sentence of confinement in this case, the trial court found, in relevant part, as follows:

> The defendant was convicted of a B felony, facilitation of second-degree murder. He had a prior history of convictions for assault in Circuit Court and drug possession, possession of a firearm in Sessions Court. At the time of the commission of the offense in this case he was on probation. He testified [he is] presently twenty years old and was affiliated with a gang while a juvenile. And during the juvenile years he was tried on both anger management and mental health counseling.
>
> [Tennessee Code Annotated section] 40-36-106 authorizes nonviolent felony offenders in a community-based alternative to incarceration, but the Court finds this is not a proper case for the defendant to receive either alternate sentencing or probation. [He has] been tried on probation in the past without success and persists in committing criminal behavior.

Following our review of the record, we find nothing which preponderates against the court's findings. After reading the findings, it is clear that the trial court found "evidence to

the contrary" existed in that the defendant had measures less restrictive than confinement frequently or recently applied unsuccessfully. A reading of the transcript reflects that the trial court considered all required principles of sentencing, as well as the defendant's prior criminal history, his probationary status, and his potential for rehabilitation. The record supports the trial court's conclusion in that the presentence report, admitted without objection, reflects that the twenty-year-old defendant had prior convictions for assault, possession of marijuana, driving without a license, and possession of a firearm. The report also lists several juvenile incidents including unruly behavior, two assaults, disorderly conduct, vandalism, burglary, theft, aggravated assault, and resisting arrest. The report further reflects that the defendant was on probation for a marijuana conviction at the time the instant crime occurred and that he had violated probation on at least four prior occasions as a juvenile. Additionally, with regard to the defendant's potential for rehabilitation, the court, in addition to considering the prior failures to complete his probationary sentence, also noted that anger management and mental health counseling had previously been utilized. Finally, the record reflects that the court considered the defendant's involvement with the Gangster Disciples. Although the defendant indicated he had renounced his membership in the gang, the court heard evidence that he was involved in a very serious gang-related assault following the alleged renouncement and, further, that prison authorities had classified the defendant as a gang member based upon his tattoos and statements made during intake. The information contained in the record more than amply supports the trial court's findings, as the defendant failed to present any evidence indicating that the sentence was improper. As such, we find no error in the decision to order that the sentence be served in confinement.

## CONCLUSION

Based upon the foregoing, the judgment of the Lauderdale Circuit Court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE